UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RHONDA KATCHENAGO,
O/B/O RJ, A MINOR,

        Plaintiff,

    v.                                    Case No. 07-C-100

MICHAEL J. ASTRUE,
Commissioner for Social Security,

        Defendant.

**ORDER**

Plaintiff Rhonda Katchenago commenced this action on behalf of RJ, a minor for whom she has served as guardian and representative payee, seeking judicial review of the final decision of the Commissioner of Social Security that RJ is not entitled to continuation of his Supplemental Security Income ("SSI") under the Social Security Act. 42 U.S.C. §§ 1381a, 1382c; 20 C.F.R. § 416.994a. On January 3, 2008, the Court reversed the Commissioner's decision and remanded the matter for further proceedings. Katchenago now moves for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Katchenago first filed a fee request for $7056.60, accompanied by a supporting brief, on April 2, 2008. After noticing proofreading errors in this brief, counsel for Katchenago filed a motion on May 23, 2008, requesting that the Court accept an amended version of the brief in which these minor errors were corrected. The Commissioner has not opposed the motion to amend, and the Court will consider the amended version of the brief. Katchenago also filed a second motion for attorney's fees on May 23, 2008,

seeking an additional $1322.10 in attorney's fees she has incurred for the preparation of her fee request. For the reasons stated herein, Katchenago will be awarded the attorney's fees requested.

**I. Background**

The facts underlying Katchenago's complaint are set out in detail in the Court's decision ordering remand. Therefore, I will only provide a brief recitation here. RJ, who was 15 years-old at the time of the hearing before the administrative law judge ("ALJ"), first qualified for SSI on February 16, 1999, when, at age 9, he was found to meet the requirements of listing 112.05D of the Childhood List of Impairments, due to mild mental retardation and attention deficit hyperactivity disorder ("ADHD"). Upon a subsequent continuing disability review, however, the Agency determined that RJ had experienced medical improvement and that the severity of his impairments no longer met the requirements of that listing. Therefore, the Agency notified Katchenago that RJ's SSI would terminate as of April 2004. On May 15, 2006, the cessation of benefits was affirmed by an ALJ. Katchenago filed suit seeking judicial review of the ALJ's decision.

On January 3, 2008, the Court reversed and remanded the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g) (sentence four), finding that the ALJ failed to apply the proper Agency standard for evaluating the severity of a claimant's impairment in the course of a continuing disability review, misstated expert testimony, failed to make the requisite factual findings as to RJ's condition, and failed to address conflicting evidence.

**II. EAJA Standard**

The EAJA mandates an award of attorney's fees to a "prevailing party" in a civil action against the United States where the government's position was not "substantially justified," no

"special circumstances" make an award unjust, and the fee application is submitted to the court within 30 days of final judgment. 28 U.S.C. § 2412(d)(1); *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000). Because I reversed and remanded the Commissioner's decision under sentence four of § 405(g), Katchenago was the "prevailing party" in this litigation. *See Shalala v. Schaefer*, 509 U.S. 292, 302 (1993); *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir. 1995). In the present case, the Commissioner has not challenged the calculation of the fees sought by Katchenago, and the parties agree that the only issue in question is whether the Commissioner's position was "substantially justified." The Commissioner has the burden of proving that his position was substantially justified. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004).

Attorney's fees may be awarded if either the Commissioner's pre-litigation conduct or his litigation position lacked substantial justification. *Id*. The ALJ's decision is considered part of the Commissioner's pre-litigation conduct, but the district court is to make only one determination for the entire civil action. *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). Thus, fees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa. *Id*.

Accordingly, the duty of the Court is to make a "global assessment" of the Commissioner's conduct, *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1081 (7th Cir. 2000), rather than a review of "atomized line items." *Commissioner, INS v. Jean*, 496 U.S. 154, 161-62 (1990). The Commissioner's position is substantially justified if his conduct has a "reasonable basis in law and fact, that is, if a reasonable person could believe the position was correct." *Marcus*, 17 F.3d at 1036 (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2 (1988)).

3

**III. Analysis**

As explained in the Court's order directing remand, the SSA determines whether a child-claimant is disabled through the use of a three-part test. The test requires the Agency to determine: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has a severe impairment; and (3) if so, whether the impairment meets, equals, or functionally equals one of the impairments listed by the SSA as being presumptively disabling. See 20 C.F.R. § 416.924. A child's impairment only meets or equals a listed impairment if all specific criteria of the particular listing are met. *See Keys v. Barnhart*, 347 F.3d 990, 992 (7th Cir. 2003). A child's impairment functionally equals a listing if he has "marked" limitations in two, or "extreme" limitation in one, of the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. §§ 416.926a(a)-(b)(1). After a child claimant is found disabled, the Agency periodically conducts a "continuing disability review," to determine whether he is still eligible for benefits, evaluating (1) whether the claimant has experienced "medical improvement" since the time of the "comparison point decision" ("CPD"), the last decision finding claimant disabled that became final, (2) if so, whether the claimant's impairment still meets, or medically or functionally equals, the severity of the listing it met or equaled at the time of the CPD, and (3) if the claimaint's impairment no longer meets or equals the listing it met at the time of the CPD, whether the claimant is nonetheless currently disabled under § 416.924. See 20 C.F.R. § 404.1589.

In this case, a number of errors in the ALJ's reasoning led this Court to reverse the denial of benefits, and to remand the case for further consideration. I concluded that contrary to Agency

4

regulations, the ALJ failed to determine whether RJ's impairment still meets, or medically or functionally equals, the severity of the listing it met at the time of the CPD. Although the ALJ recognized that the relevant CPD was the Agency's original finding on Februrary 16, 1999, that RJ's impairment met the requirements of listing 112.05D, he failed to determine how RJ's current condition compares with that listing, instead comparing RJ's impairment to listing 112.02, regarding organic brain disorder, upon the advice of a medical expert ("ME") who opined that RJ was more appropriately evaluated under the latter listing. I noted that if it were the only problem with the ALJ's decision, I might have found the failure of the ALJ to specifically reference listing 112.05D and articulate his reasoning process in more detail to be harmless error, because it appeared abundantly clear from the undisputed evidence that RJ's recent IQ scores showed improvement such that his impairment no longer meets the requirements of listing 112.05D as of April of 2004.

However, I found that even if analysis under listing 112.02 were appropriate, the ALJ also failed to comply with the requirement of 20 C.F.R. § 416.924 that the Agency determine whether the claimant's impairment meets, equals, or functionally equals one of the impairments listed by the SSA as being presumptively disabling. The ALJ did not determine whether RJ's impairment meets or medically equals listing 112.02, and instead proceeded directly to the question of whether his impairments meet the test set forth in 20 C.F.R. §§ 416.926a(a)-(b)(1) for functional equivalency.

Ultimately, I concluded that even the ALJ's finding that RJ's limitations were not the functional equivalent of listing 112.02 was based on flawed analysis. The ALJ misstated the testimony of the ME as stating that RJ still has marked limitations in acquiring and using information when, in fact, the ME testified that RJ has "less than marked" limitations in acquiring and using information, but "marked" limitations in attending and completing tasks. The ALJ failed

5

to make any finding at all as to RJ's ability to attend and complete tasks, an essential component of the test for functional equivalence, and failed to at least confront evidence offered by RJ's family and teacher in support of his claim and explain why it was rejected.

Nonetheless, the Commissioner claims, "a reasonable person could review this matter and conclude that the government's position had a reasonable basis in law and fact." (Br. Opp. 4.) According to the Commissioner, because the Court found it clear from the record that RJ does not meet the requirements of listing 112.05D, the ALJ's "lack of discussion of" this listing was substantially justified. (Br. Opp. 7.) Indeed, the Court's order remanding the case explains that were this the only problem with the ALJ's decision, the Court may have found this shortcoming to be harmless error. (Order at 10-11, Jan. 3, 2008.) However, to determine whether an award of fees is appropriate in this case, the Court must make a broader, global assessment of the Commissioner's position.

The Commissioner notes that both the test to determine whether a child meets or medically equals a listing, and the test to determine whether a child functionally equals a listing, measure the severity of the child's impairment. Because both standards measure severity, the Commissioner claims that the ALJ was substantially justified in analyzing RJ's impairments under the functional equivalence standard, without making a separate finding as to whether his impairments meet or equal the specific criteria of listing 112.02. (Br. Opp. 9.) According to the Commissioner, an ALJ may reasonably forego inquiry into whether a child meets the medical criteria set forth by an applicable listing and require instead that the child demonstrate functional limitations equivalent in severity. But the regulations provide for a presumption of disability upon a showing of *either* the requisite criteria or equivalent functional limitations. The Commissioner's suggestion that an

6

analysis of functional equivalency alone may suffice ignores the clearly established criteria of the listings and would deprive child applicants of the opportunity to qualify for benefits on the basis of those criteria, contrary to Agency regulation. *See Keys v. Barnhart*, 347 F.3d 990, 992 (7th Cir. 2003) (holding that "in cases in which the child has a 'listed impairment,'" he is entitled to benefits "without any further inquiry into his ability," but "if he is not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether he is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication.") Therefore, no reasonable person could conclude this position to be correct.

Furthermore, the Court previously concluded that the ALJ's analysis of RJ's impairments under the functional equivalence standard was itself "confused and deficient" based upon his misstatement of the ME's testimony, failure to make a finding as to RJ's ability to attend to and complete tasks, and failure to confront conflicting evidence. (Order at 11, Jan. 3, 2008.) The Commissioner argues that the ALJ's failure to discuss and explain his rejection of the testimony of RJ's family and a questionnaire completed by RJ's teacher regarding his limitations, even if a sufficient reason for remand, "does not render his decision not substantially justified." (Br. Opp. 11.) Citing *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006), and *Stein v. Sullivan*, 966 F.2d 317, 319-20 (7th Cir. 1992), the Commissioner notes that an ALJ's failure to adequately articulate his path of reasoning does not necessitate a finding that the Commissioner's position was not substantially justified. The Commissioner claims that like *Cunningham* and *Stein*, "this is simply a case in which the court ordered remand because it found that the ALJ did not explain his reasoning as carefully and thoroughly as necessary." (Br. Opp. 11.) This assertion is belied by the Court's conclusion that in the present case the ALJ failed to comply with Agency regulations and

7

properly apply Agency standards when considering RJ's claim.

In both *Cunningham* and *Stein*, the Seventh Circuit Court of Appeals acknowledged the imprecise nature of the requirement that an ALJ articulate his analysis of the evidence and indicate the path of his reasoning. In *Stein*, the Court affirmed a district court's denial of a request for attorney's fees where a genuine dispute had arisen as to the sufficiency of an ALJ's articulation of his consideration of contrary evidence. 966 F.2d at 319 (holding that "the level of articulation required is far from precise . . . . [and] [t]he requirement that the ALJ articulate his consideration of the evidence is deliberately flexible.") In *Cunningham*, the Court affirmed a district court's denial of fees where remand was based upon an ALJ's failure to adequately explain why he rejected the claimant's testimony as incredible in spite of objective medical evidence supporting the testimony. The *Cunningham* Court contrasted the case before it with *Golembiewski v. Barnhart*, 382 F.3d 721 (7th Cir. 2004), in which the Court had found the Commissioner's position unjustified. The *Cunningham* Court explained that in *Golembiewski*, it had concluded an award of fees was appropriate, where "the ALJ's decision contained *no discussion* of credibility," "mischaracterized the medical evidence and also ignored evidence supporting [the claimant's] claim," 440 F.3d at 864, whereas the ALJ in the case before it had not committed such errors, but merely "failed to connect all the dots in his analysis." *Id*. at 865. Because such problems were absent from the ALJ's decision in *Cunningham* and the parties merely disputed whether the ALJ had adequately explained his analysis, the Court determined that the district court had not erred in finding the Commissioner's position substantially justified.

I find the instant case more similar to *Golembiewski* than *Cunningham*, based on my conclusion that the ALJ failed to make a finding as to RJ's ability to attend to and complete tasks,

8

contrary to Agency regulation, misstated the ME's testimony concerning RJ's limitations, and issued a decision that "contains no determination as to the credibility of the records or testimony that was offered to support the claim that RJ remains disabled." (Order at 14, Jan. 3, 2008.) These errors amount to more than a failure by the ALJ to adequately explain his reasoning. Taken as a whole, and combined with the ALJ's failure to articulate his consideration, if any, of RJ's impairments under listing 112.05D, they reveal a lack of substantial justification in the ALJ's decision and the Commissioner's defense of that position.

Therefore, I find that Katchenago is entitled to attorney's fees pursuant to the EAJA. Katchenago has shown that her counsel's proposed hourly rate of $159.29 is justified due to an increase in the cost of living. (Duncan Aff., Apr. 2, 2008.) See 28 U.S.C. § 2412(d)(2)(A) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."). In addition, she has provided an itemized statement for the work hours her attorney billed for this case. The Commissioner neither objects to the reasonableness of the hourly rate nor the time billed by Katchenago's attorney, for which the award is now sought. The Court finds both the hourly rate and billed time to be reasonable under the EAJA.

**IV. Conclusion**

Accordingly, Katchenago's motion to amend, as well as her first motion for attorney's fees and her second motion for fees expended in connection with the present fee petition are GRANTED, and Katchenago is awarded the sum of $8,378.70. Because the Court finds Katchenago signed an

agreement to assign any and all attorney's fees awarded under the EAJA to her attorney, (Fee Agreement, Dkt. # 26) the Commissioner of the Social Security Administration shall make this award payable to Attorney Dana W. Duncan.

      **SO ORDERED** this   8th   day of July, 2008.

                                        s/ William C. Griesbach
                                        William C. Griesbach
                                        United States District Judge